**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____

CHARLES HARGROVE and CARLA
HARGROVE,

          Plaintiffs,

          v.

PLEASANTVILLE HOUSING
AUTHORITY and VERNON
LAWRENCE, Executive Director,

          Defendants.

_____

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil No. 19-1162 (RBK/KMW)

**OPINION**

**KUGLER**, United States District Judge:

This case comes before the Court on Defendants Pleasantville Housing Authority ("PVHA") and Executive Director Vernon Lawrence's Motion to Dismiss (Doc. No. 8). The case is in a somewhat strange posture: Plaintiffs contend that the PVHA owes them lifetime healthcare benefits, and Defendants readily agree, but Plaintiffs doubt that the PVHA can make the necessary payments legally. As such, Plaintiffs press claims for a violation of due process under 42 U.S.C. § 1983, for violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–12a, and common law breach of contract, negligence, negligent misrepresentation, and intentional misrepresentation. Ultimately, the Court concludes that Plaintiffs lack standing to bring their claims, and as such, Defendants' Motion is **GRANTED**.

## I.      BACKGROUND

As alleged in the Amended Complaint, Plaintiff Charles Hargrove served as the Executive Director of the PVHA from 2004 to 2009. (Doc. No. 3 ("FAC") at ⁋ 7). On February 22, 2006, the PVHA's Board of Commissioners adopted Resolution No. 2006-3, which authorized the PVHA to pay for New Jersey State Health Benefits Program ("SHBP") coverage as a post-retirement benefit for certain employees. (*Id.* at ⁋ 8). Subsequently, on July 22, 2009, the Board of Commissioners adopted Resolution 2009-12, which authorized SHBP coverage and Medicare Part B reimbursement as a post-retirement benefit for Charles Hargrove and his spouse, Plaintiff Carla Hargrove. (*Id.* at ⁋⁋ 9, 11).

On April 24, 2017, Charles received a letter from Defendant Lawrence, the current Executive Director of the PVHA, informing him that the PVHA was exiting the SHBP. (*Id.* at ⁋ 12). Lawrence advised Charles to contact Kevin Clifton, a Senior Benefits Consultant at NaitonalHR, as soon as possible. (*Id.* at ⁋ 12). Charles spoke to Clifton, as well as Albertine Palmer of PVHA Human Resources, who both assured him that the Hargroves would be able to remain in the SHBP. (*Id.* at ⁋ 13). However, Charles received a November 1, 2017 letter from the SHBP terminating his coverage effective December 1, 2017 because his coverage was contingent on the PVHA remaining in the SHBP. (*Id.*) Charles informed Lawrence of these developments via a November 8, 2017 letter. (*Id.*)

On November 28, 2017, Lawrence sent Charles a letter, explaining that the PVHA was "surprised to find out that [PVHA]'s retiree's health benefits will not be covered under the [SHBP] as previously informed" but that the PVHA was taking steps to ensure that the Hargroves did not experience a lapse in coverage. (*Id.* at ⁋ 15; Doc. No. 1-1 at 30). The Hargroves met with Alan Farber, a health insurance broker sent by the PVHA, who only provided "Medi-gap" coverage. (FAC at ⁋ 16). As such, Plaintiffs obtained private health insurance coverage at their own expense.

(*Id.*) Plaintiffs then retained counsel and put the PVHA on notice of their intent to hold the PVHA responsible for all the costs of their new coverage. (*Id.* at ¶¶ 17–18).

On January 8, 2018, the PVHA's counsel sent Plaintiffs' counsel a letter stating that the PVHA intended to reimburse the Hargroves. (*Id.* at ¶ 19). After discussions between counsel, on January 19, 2018, Plaintiffs' counsel sent Defendants' counsel a letter requesting Defendants to place their liability insurance carriers and the United States Department of Housing and Urban Development ("HUD") on notice of Plaintiffs' claims. (*Id.* at ¶ 20). After prodding by Plaintiffs' counsel, on May 4, 2018, Defendants responded by restating the PVHA's intent to reimburse the Hargroves' health insurance premium costs and requesting copies of those premiums for reimbursement. (*Id.* at ¶ 22). On June 8, 2018, Plaintiffs' counsel responded to Defendants' request for documentation with a demand for $504,348.06 in compensatory damages, representing an estimate of the costs of continued healthcare coverage for the rest of Plaintiffs' lives. (*Id.* at ¶ 23).

On June 20, 2018, the PVHA sent a letter directly to Charles requesting copies of Medicare Part B invoices for reimbursement. (*Id.* at ¶ 25). And on July 2, 2018, Defendants' counsel sent Plaintiffs' counsel another letter requesting copies of premiums paid by the Hargroves for reimbursement. (*Id.* at ¶ 26). On July 13, 2018, Plaintiffs' counsel responded with a letter asserting that the PVHA would need approval from HUD in order to reimburse the Hargroves for their premium payments and demanding that the PVHA obtain a legal opinion or representation that no such authorization was necessary from an authorized HUD representative. (*Id.* at ¶ 27). Plaintiffs requested such an opinion directly from HUD on July 26, 2018. (*Id.* at ¶ 27).

### A. Procedural History

Plaintiffs commenced this action on January 28, 2019 by filing a Complaint (Doc. No. 1), filing an Amended Complaint the next day. On May 30, 2019, Defendants filed the present Motion

to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs filed their Opposition (Doc. No. 11 ("Pl. Brief")) on July 1, 2019, and Defendants their Reply (Doc. No. 13 ("Reply")) on July 15, 2019. As such, the matter is fully briefed and ripe for decision.

Plaintiffs' claims span numerous legal theories. First, in Count I, Plaintiffs directly contend that the PVHA's conduct amounts to a breach of their obligation to provide the Hargroves with lifetime healthcare benefits. In Count II, Plaintiffs assert that Lawrence negligently misrepresented to the PVHA's Board of Commissioners that the Hargroves would continue to be covered by the SHBP when the Board voted to exit the SHBP; in Count IV, Plaintiffs contend that this misrepresentation was intentional. In Count III, Plaintiffs claim that Defendants negligently breached their duty to provide the Hargroves with lifetime healthcare benefits by exiting the SHBP. In Counts V and VI, Plaintiffs contend that the PVHA's decision to exit the SHBP violated the ADEA and the NJLAD because it had a disparate impact on the ability of retirees to maintain their health insurance coverage. Finally, in Count VII, Plaintiffs contend that Defendants' conduct deprived them of their property interest in lifetime health benefits and Medicare Part B reimbursements in violation of the Fifth and Fourteenth Amendments and Section 1983.

## II. LEGAL STANDARD

Where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the plaintiff generally bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). A district court may treat a party's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) as either a facial or factual challenge to the court's jurisdiction. *Id*. at 176. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light

most favorable to the plaintiff." *Id.* (citing *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)). By contrast, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.* (citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997)); *see United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). A district court has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III.    DISCUSSION

The core dispute between Plaintiffs and Defendants is "whether the PVHA can unilaterally and without HUD approval use federal funds to reimburse Plaintiffs for health insurance premiums *sua sponte* and without notice to HUD." (Pl. Brief at 22). Resolving this question is key to deciding whether Defendants' actions are truly the cause of Plaintiffs' difficulties, or whether Plaintiffs' have fouled their own ship by refusing to submit their premium payments to the PVHA for reimbursement. Unfortunately for Plaintiffs, they do not have standing to present this issue to the Court.

Although Defendants contend that the Court lacks subject-matter jurisdiction to hear Plaintiffs' claims, they fail to meaningfully argue that Plaintiffs lack standing. Nevertheless, "because standing is a jurisdictional requirement, the district court has the authority and the duty to raise the issue sua sponte when necessary." *In re Bowen*, No. 08-4724, 2009 WL 1173522, at *2 (D.N.J. April 24, 2009) (internal quotation omitted); *see also Steele v. Blackman,* 236 F.3d 130, 134 n.4 (3d Cir. 2001) ("[W]e are required to raise issues of standing *sua sponte* if such issues exist.").

Because federal courts may only adjudicate cases or controversies, plaintiffs must have standing. *Purpura v. Sebelius*, 446 F. App'x 496, 497 (3d Cir. 2011). In order to have constitutional standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S. Ct. 1530, 1547 (2016). To avoid dismissal, the complaint must "clearly allege facts demonstrating each element." *Id.* (internal quotation omitted).

The first element, "injury in fact" requires the plaintiff to show "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). To be concrete, the injury must be "'real," and not "abstract." *Spokeo*, 136 S. Ct. at 1548. Consequently, "a bare procedural violation" of a statute or regulation is insufficient to satisfy the injury-in-fact requirement. *Id.* at 1549.

If Plaintiffs simply alleged that Defendants had unilaterally terminated their healthcare benefits, they would almost certainly meet every element of the standing inquiry. But the situation is more complicated. While the PVHA can no longer pay for Plaintiffs' coverage through the SHBP, it has consistently stated that it intends to reimburse Plaintiffs for their private insurance and Medicare Part B coverage. Plaintiffs do not contend that Defendants are being insincere.

Rather, Plaintiffs assert that the PVHA *may be* barred by HUD regulations from reimbursing them for their private insurance coverage. The emphasis on "may be" is deliberate— Plaintiffs refuse to definitively state that such reimbursement would violate HUD regulations, instead always hedging their position in some fashion.[1] Plaintiffs never clearly spell out this theory. Nevertheless, the Court has done its best to piece their argument together.

---

[1] *See* Pl. Brief at 12 ("[Plaintiffs] do not want to be in a position where it appears that they are *arguably* complicit in payment made by the PVHA on their behalf in violation of HUD rules and regulations." (emphasis added) (internal quotation omitted)); *id.* at 22 ("HUD's regulations *arguably* prevent the PVHA from complying with their contractual duties." (emphasis added)); *id.* at 36 ("Effectively, those funds to be used by the PVHA to cover the Plaintiffs' insurance and other costs would be an outside expenditure by the PVHA and *arguably* an unauthorized use of federal funds outside of HUD's approval." (emphasis added)).

Plaintiffs assert, and Defendants do not dispute, that the PVHA participates in the Housing Choice Voucher Program ("HCVP"), also known as "Section 8." Under this program, public housing authorities ("PHAs") like the PVHA receive federal funding to subsidize rent payments to private landlords for low-income individuals. 42 U.S.C. § 1437f(*o*). PHAs must comply with a host of regulatory requirements, including an obligation to prepare and submit a proposed program budget to HUD each fiscal year. 24 C.F.R. § 982.157. HUD must approve this budget, and PHAs may only disburse federal funds in accordance with it. *Id*. As such, Plaintiffs claim that if the PVHA wishes to use federal funds to reimburse their private insurance premiums, the PVHA must include such payments in the operating budget it submits to HUD. (Pl. Brief at 12).

But according to Plaintiffs, the PVHA's hands are tied by Resolution 2006-03, which initially authorized the PVHA to offer medical coverage as a post-retirement benefit. In relevant part, Resolution 2006-03 updated the PVHA's personnel policy to provide that "[i]n accordance with N.J.S.A. 52:14.17.38, the Pleasantville Housing Authority may agree to pay for the State Health Benefits Program (S.H.B.P.) medical coverage for certain retirees of the Pleasantville Housing Authority as a post retirement benefit." (Doc. No. 1-1 at 13). As such, the PVHA's personnel policy appears to only authorize providing retirees with *SHBP* medical coverage, rather than with medical coverage generally. Due to the personnel policy's restrictive language, Plaintiffs assert that the PVHA cannot validly enact an operating budget authorizing reimbursement for private medical insurance coverage for retirees. And if the PVHA cannot include such reimbursements in its operating budget, it cannot secure HUD approval; and without HUD approval, it cannot disburse federal funds to Plaintiffs without violating 24 C.F.R. § 982.157. (Pl. Brief at 12).

Concerned that they would be complicit in the misuse of federal funds, Plaintiffs have refused to submit copies of their private insurance premiums to Defendants, stymieing any effort at reimbursement. (*Id.*). As such, the crux of this lawsuit is not whether Defendants are obliged to reimburse Plaintiffs, which Defendants readily concede, (Reply at 7), nor whether Defendants were legally permitted to exit the SHBP, which Plaintiffs do not contest (Pl. Brief at 6). Consequently, the injury undergirding Plaintiffs' claims is not the need to pay for their own private insurance coverage, nor their loss of SHBP coverage. Rather, the parties' dispute is entirely focused on the legality of the PVHA's efforts to meet its obligations.[2] But the fact that the PVHA may violate HUD regulations is not enough to confer standing upon Plaintiffs, as that would be nothing more than the sort of "bare procedural violation" *Spokeo* warned against. Consequently, Plaintiffs need to demonstrate that the PVHA's possible violation of HUD regulations actually harms them.

There are two possible ways the violation of HUD regulations could harm Plaintiffs. First, Plaintiffs could be subject to repercussions due to their complicity in the misuse of federal funds. (Pl. Brief at 12). Second, if HUD were to discover the PVHA's violations, it could take enforcement action against the PVHA, preventing the PVHA from continuing to make reimbursement payments to Plaintiffs. As such, both theories rest on the possibility of future enforcement actions by HUD or some other agency.

A "credible threat of enforcement" may be a constitutional injury-in-fact, but in order to satisfy the "actual or imminent requirement" that threat must be "substantial" rather than "chimerical." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161, 164 (2014) (internal quotation

---

[2] This issue is central to determining whether the PVHA was the cause of harm Plaintiffs have experienced since the PVHA exited the SHBP. If the proposed reimbursements would not violate HUD regulations, then Plaintiffs' refusal to accept such reimbursements has been the cause of their damages, rather than Defendants' actions. This problem cuts equally across all of Plaintiffs' various claims.

omitted) (finding substantial threat of future enforcement of challenged statute where administrative enforcement agency handled 20 to 80 complaints under the statute per year and violations carried threat of criminal prosecution). The plaintiff must identify the nature of the future enforcement action with specificity. *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (explaining that "[a] plaintiff . . . lacks standing if his "injury" stems from an indefinite risk of future harms inflicted by unknown third parties"). If the plaintiff's theory of harm depends entirely on the actions of third parties, the plaintiff must sufficiently demonstrate "that [the] third persons will take the action exposing the plaintiff to harm." *Lujan*, 504 U.S. 564 n.2. Without such a demonstration, there is an unacceptable risk of deciding a case in which "no injury would have occurred at all." *Reilly*, 664 F.3d at 42 (internal quotation omitted).

Plaintiffs have not alleged sufficient facts to substantiate such a threat of future enforcement. Their theories of harm rely on speculation that: (1) the PVHA will use federal funds to reimburse Plaintiffs; (2) the PVHA will either not include such reimbursement in its operating budget or that HUD will not approve an operating budget containing such reimbursements; (3) that HUD will consequently bring an enforcement action against the PVHA; and (4) that the enforcement action will either somehow ensnare Plaintiffs or will permanently prevent the PVHA from making future reimbursement payments. This chain of events is entirely dependent on actions taken by the PVHA or third parties, and Plaintiffs fail to adequately allege that these actors will follow this path.

Plaintiffs fail to specify the nature of the enforcement action they believe would be taken against them. The Court is not aware of any statute, regulation, or other legal authority indicating that Plaintiffs, rather than the PVHA, would face any sort of consequence should the PVHA improperly reimburse them for their health insurance premiums, given the allegations in the

Amended Complaint. Similarly, Plaintiffs fail to explain why an enforcement action against the PVHA would permanently bar the PVHA from meeting its obligations to Plaintiffs. After all, the source of the alleged issue lies not in the HUD regulations, but in the PVHA's own personnel policy, which the PVHA surely has the power to amend if HUD were to object.

Plaintiffs' hedging on whether the reimbursement plan would actually violate HUD regulations further undermines their case for constitutional injury, as it makes such injury seem even more hypothetical than actual. Indeed, it appears that out of their frustration with the PVHA's refusal to obtain an advisory opinion from HUD, Plaintiffs now seek an advisory opinion on the scope of these regulations from this Court. But unlike administrative agencies, "[f]ederal courts have no jurisdiction to render advisory opinions." *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013).

It is HUD's prerogative to enforce the strictures of the HCVP program on PHAs, and it is worth noting that although Plaintiffs have put HUD on notice of the PVHA's reimbursement plan, the agency has taken no steps to intervene. By filing this lawsuit, Plaintiffs attempt to usurp HUD's prerogative by forcing Defendants to comply with Plaintiffs' speculation as to what HUD's regulations require. Plaintiffs are not categorically barred from pursuing this course of action, but they need to demonstrate that injury will befall them if the Court does not allow it. Alternatively, they must demonstrate that Defendants have injured them regardless of whether the proposed reimbursements are lawful. Because the Amended Complaint does neither, all of Plaintiffs' claims must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** and Plaintiffs' Amended Complaint is **DISMISSED** without prejudice. Plaintiffs shall have until December 24,

2019 to file a motion to amend their complaint, consistent with this Opinion and Local Civil Rule

15.1.[3] An Order follows.

Dated: 12/10/2019                                          /s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge

---

[3] The Court notes that the Amended Complaint purports to invoke the Court's federal-question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity-jurisdiction pursuant to 28 U.S.C. § 1332. Although the Amended Complaint sufficiently raises federal questions, the allegations supporting diversity jurisdiction are inadequate because they merely provide that Plaintiffs are residents of Pennsylvania, rather than citizens of Pennsylvania. (FAC ¶ 1); *see McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 219 n.4 (3d Cir. 2012) (noting that averments of residency are "jurisdictionally inadequate in [a] diversity of citizenship case").