NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHARLES HARGROVE and CARLA HARGROVE, | : : : : |
| Plaintiffs, | : Civil No. 19-1162 (RBK/KMW) : |
| v. | : **OPINION** : |
| PLEASANTVILLE HOUSING AUTHORITY and VERNON LAWRENCE, Executive Director, | : : : : |
| Defendants. | : : |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion for Leave to File a Second Amended Complaint (Doc. No. 19) filed by Plaintiffs Charles Hargrove and Carla Hargrove. For the reasons set forth below, Plaintiffs' Motion is **GRANTED**.

**I.     BACKGROUND**

The Court has already discussed the factual background of this case in its December 10, 2019 Opinion dismissing Plaintiffs' First Amended Complaint. *See Hargrove v. Pleasantville Housing Auth.*, No. 19-1162, 2019 WL 6712308, at *1–2 (D.N.J. Dec. 10, 2019). Nevertheless, for the sake of clarity, it is necessary to once again review the history of Plaintiffs' claims, as well as to discuss Plaintiffs' new allegations as to what has transpired in the aftermath of the Court's December 10 ruling.

Plaintiff Charles Hargrove served as the Executive Director of the Pleasantville Housing Authority ("PVHA") from 2004 to 2009. (Doc. No. 19-3 ("SAC") at ¶ 7). On February 22, 2006,

1

the PVHA's Board of Commissioners adopted Resolution No. 2006-3, which authorized the PVHA to pay for New Jersey State Health Benefits Program ("SHBP") coverage as a post-retirement benefit for certain employees. (*Id*. at ¶ 8). Subsequently, on July 22, 2009, the Board of Commissioners adopted Resolution 2009-12, which authorized SHBP coverage and Medicare Part B reimbursement as a post-retirement benefit for Charles Hargrove and his spouse, Plaintiff Carla Hargrove. (*Id*. at ¶¶ 9, 11).

On April 24, 2017, Charles received a letter from Defendant Lawrence, the current Executive Director of the PVHA, informing him that the PVHA was exiting the SHBP. (*Id*. at ¶ 12). Lawrence advised Charles to contact Kevin Clifton, a Senior Benefits Consultant at NaitonalHR, as soon as possible. (*Id*. at ¶ 12). Charles spoke to Clifton, as well as Albertine Palmer of PVHA Human Resources, who both assured him that the Hargroves would be able to remain in the SHBP. (*Id*. at ¶ 13). However, Charles received a November 1, 2017 letter from the SHBP terminating his coverage effective December 1, 2017 because his coverage was contingent on the PVHA remaining in the SHBP. (*Id*.) Charles informed Lawrence of these developments via a November 8, 2017 letter. (*Id*.)

On November 28, 2017, Lawrence sent Charles a letter, explaining that the PVHA was "surprised to find out that [PVHA]'s retiree's health benefits will not be covered under the [SHBP] as previously informed" but that the PVHA was taking steps to ensure that the Hargroves did not experience a lapse in coverage. (*Id*. at ¶ 15; Doc. No. 19-5 at 30). The Hargroves met with Alan Farber, a health insurance broker sent by the PVHA, who only provided "Medi-gap" coverage. (SAC at ¶ 16). As such, Plaintiffs obtained private health insurance coverage at their own expense. (*Id*.) Plaintiffs then retained counsel and put the PVHA on notice of their intent to hold the PVHA responsible for all the costs of their new coverage. (*Id*. at ¶¶ 17–18).

On January 8, 2018, the PVHA's counsel sent Plaintiffs' counsel a letter stating that the PVHA intended to reimburse the Hargroves. (*Id*. at ¶ 19). After discussions between counsel, on January 19, 2018, Plaintiffs' counsel sent Defendants' counsel a letter requesting Defendants to place their liability insurance carriers and the United States Department of Housing and Urban Development ("HUD") on notice of Plaintiffs' claims. (*Id*. at ¶ 20). After prodding by Plaintiffs' counsel, on May 4, 2018, Defendants responded by restating the PVHA's intent to reimburse the Hargroves' health insurance premium costs and requesting copies of those premiums for reimbursement. (*Id*. at ¶ 22). On June 8, 2018, Plaintiffs' counsel responded to Defendants' request for documentation with a demand for $504,348.06 in compensatory damages, representing an estimate of the costs of continued healthcare coverage for the rest of Plaintiffs' lives. (*Id*. at ¶ 23).

On June 20, 2018, the PVHA sent a letter directly to Charles requesting copies of Medicare Part B invoices for reimbursement. (*Id*. at ¶ 25). And on July 2, 2018, Defendants' counsel sent Plaintiffs' counsel another letter requesting copies of premiums paid by the Hargroves for reimbursement. (*Id*. at ¶ 26). On July 13, 2018, Plaintiffs' counsel responded with a letter asserting that the PVHA would need approval from HUD in order to reimburse the Hargroves for their premium payments and demanding that the PVHA obtain a legal opinion or representation that no such authorization was necessary from an authorized HUD representative. (*Id*. at ¶ 27). Plaintiffs requested such an opinion directly from HUD on July 26, 2018. (*Id*. at ¶ 27).

Plaintiffs commenced this action on January 28, 2019 by filing a Complaint (Doc. No. 1), filing an Amended Complaint (Doc. No. 3) the next day. Plaintiffs claimed that Defendants' actions violated their Fourteenth Amendment Due Process rights, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*., the New Jersey Law Against Discrimination,

N.J.S.A. 10:5–12, and state common law. On May 30, 2019, Defendants filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

On December 10, 2019, the Court granted Defendants' Motion to Dismiss. *Hargrove*, 2019 WL 6712308, at *6. Although Defendants did not clearly raise the issue of constitutional standing in their Motion, the Court raised it *sua sponte*. *Id.* at *3. Noting that Defendants consistently affirmed their intention to reimburse Plaintiffs for their health insurance premiums, the Court determined that the crux of the parties' dispute was whether the PVHA could use HUD funds to reimburse Plaintiffs for their health insurance premiums. *Id.* at *3–4. However, the Court found that Plaintiffs had not sufficiently alleged that any potential violation of these regulations could result in harm to them. *Id.* at *4–6. As such, the Court concluded that Plaintiffs had failed to satisfy the "injury-in-fact" requirement of standing, explaining that:

> By filing this lawsuit, Plaintiffs attempt to usurp HUD's prerogative by forcing Defendants to comply with Plaintiffs' speculation as to what HUD's regulations require. Plaintiffs are not categorically barred from pursuing this course of action, but they need to demonstrate that injury will befall them if the Court does not allow it. Alternatively, they must demonstrate that Defendants have injured them regardless of whether the proposed reimbursements are lawful. Because the Amended Complaint does neither, all of Plaintiffs' claims must be dismissed.

*Id.* at *6. The Court gave Plaintiffs until December 24, 2019 to file a motion to amend their complaint. *Id.*

On December 18, 2019, Plaintiffs' counsel sent Defendant's counsel an email asking if the PVHA was prepared to reimburse Plaintiffs for their health insurance premiums on or before December 24. (SAC at ¶ 33; Doc. No. 19-7 at 2). Plaintiffs' also requested that the Court extend the deadline to file a motion for leave to amend to February 7, 2020; the Court granted this request. (Doc. Nos. 16, 17). On December 20, 2019, Plaintiffs' counsel sent Defendant's counsel a letter detailing Plaintiffs' health insurance expenditures during 2018 and 2019 and requesting

4

$17,779.33 in reimbursement. (SAC at ¶¶ 35–38; Doc. No. 19-7 at 8–9). Plaintiffs' counsel requested a response on or before December 23, 2019. (Doc. No. 19-7 at 9). Plaintiffs sent additional documentation to Defendants' counsel on December 23, 2019. (SAC at ¶ 38; Doc. No. 19-7 at 11–12).

Defendants did not respond to these communications until January 15, 2020, when Defendants' counsel advised Plaintiffs' counsel that the PVHA Board of Commissioners would be meeting on January 22, 2020. (SAC at ¶ 39). On January 27, 2020, Defendant's counsel sent an email to Plaintiffs' counsel indicating that the Board of Commissioners had decided against reimbursing Plaintiffs at the present time. (SAC at ¶ 42; Doc. No. 19-7 at 23–24). Instead, the Board had decided to file a motion for sanctions against Plaintiffs, seeking to offset the reimbursement payments owed to Plaintiffs by the amount the board had spent on its legal defense during this litigation. (SAC at ¶ 43; Doc. No. 19-7 at 23–24).

On February 3, 2020, Defendants filed their promised Motion for Sanctions. (Doc. No. 18). Plaintiffs' filed the present Motion to Amend on February 7, 2020. On March 30, 2020, the Court denied Defendants' Motion for Sanctions for failing to comply with the procedural requirements of Federal Rule of Civil Procedure 11. (Doc. No. 24). The Court now turns its attention to Plaintiffs' Motion to Amend.

## II.  LEGAL STANDARD

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15(a), which states that leave to amend "shall be freely given as justice so requires." The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990). Leave to amend under Rule 15 should be denied only in certain circumstances,

such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or clear futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Fed. Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 874 (3d Cir. 1994). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). A claim is "futile" if it would not survive a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6). *Id.*; *United States v. Sensient Colors, Inc.*, No. 07-1275, 2009 WL 394317, at *3 (D.N.J. Feb. 13, 2009), *aff'd*, 649 F. Supp. 2d 309 (D.N.J. 2009).

Where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the plaintiff generally bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). A district court may treat a party's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) as either a facial or factual challenge to the court's jurisdiction. *Id.* at 176. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citing *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)). By contrast, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." *Id.* (citing *Gotha v. United States*, 115 F.3d 176, 178–79 (3d Cir. 1997)); *see United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). A district court has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of

disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### III. DISCUSSION

Defendants contend that Plaintiffs' efforts to amend are futile, as the allegations contained in the Second Amended Complaint are insufficient to confer standing.[1] (Doc. No. 21 ("Def. Brief") at 10). In order to have constitutional standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S. Ct. 1530, 1547 (2016). To avoid dismissal, the complaint must "clearly allege facts demonstrating each element." *Id.* (internal quotation omitted).

The first element, "injury in fact" requires the plaintiff to show "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). To be concrete, the injury must be "'real," and not "abstract." *Spokeo*, 136 S. Ct. at 1548. Consequently, "a bare procedural violation" of a statute or regulation is insufficient to satisfy the injury-in-fact requirement. *Id.* at 1549.

As discussed above, the Court previously concluded that Plaintiffs' first Amended Complaint did not satisfy the injury-in-fact requirement. At that time, Plaintiffs were principally concerned with whether the PVHA's reimbursement proposal was permissible under HUD regulations, an issue the Court found to be non-justiciable. But as alleged in the Second Amended Complaint, the situation between the parties has completely changed since the Court issued its December 10, 2019 Opinion. Plaintiffs are no longer refusing to submit to Defendants' reimbursement plan due to fear of a possible HUD enforcement action; rather, Defendants are refusing to reimburse Plaintiffs, apparently in an effort to extract compensation for their legal fees. (*See* Def. Brief at 16 ("Following the accumulation of thousands of dollars of attorneys' fees and

---

[1] Defendants do not make any argument that Plaintiffs' claims would fail to survive a Rule 12(b)(6) motion to dismiss. As such, the Court does not address the merits of any of Plaintiffs' claims.

expenses incurred to defend themselves in this lawsuit, the PVHA Defendants respectfully request an offset of their legal expenses prior to reimbursing Plaintiffs for any qualified medical expenses.")).

Defendants' failure to reimburse Plaintiffs is a constitutionally cognizable injury-in-fact. Defendants acknowledge that Plaintiffs are owed reimbursement for their health insurance expenses, (*id.*); Defendants affirm that they have received documentation of Plaintiffs' health insurance expenses for 2018 and 2019 and accept that the overwhelming majority of these expenses qualify for reimbursement, (*id.* at 12–14 (indicating that the PVHA believes Plaintiffs are owed $17,576.83 in reimbursement for expenses incurred in 2018 and 2019)); and Defendants attest that it was their own decision, not HUD's, to decline to reimburse Plaintiffs, (*id.*). Consequently, the core issue of this case is the legality of the PVHA's refusal to honor its obligation to Plaintiffs. Such an issue is plainly justiciable.

Defendants complain that it is unfair to expect them to quickly reimburse Plaintiffs after Plaintiffs held up the reimbursement process for years. (*Id.* at 14). This argument is misguided for several reasons. First, "fairness" is not an element of Article III standing. Second, there can be no dispute that at this moment in time Defendants, not Plaintiffs, are impeding the reimbursement process, and that their failure to reimburse is injurious. And third, Defendants were afforded plenty of time to reimburse Plaintiffs, as there was well over one month between their receipt of Plaintiffs' expense documentation and the filing of this Motion. During that time, the PVHA Board of Commissioners held a meeting and decided to file a Motion for Sanctions before reimbursing any

9

of Plaintiffs' expenses.[2] (Doc. No. 21-1 at ¶¶ 14–15). Defendants must live with the consequences of that decision.

IV. **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion is **GRANTED**; Plaintiffs may file their proposed Second Amended Complaint on or before June 9, 2020. An Order follows.


Dated: 06/03/2020                                                                /s/ Robert B. Kugler
                                                                                 ROBERT B. KUGLER
                                                                                 United States District Judge

---

[2] It has now been almost four months since the Motion to Amend was filed, and over two months since the Court dismissed Defendants' Motion for Sanctions. During this time, neither Plaintiffs nor Defendants have informed the Court of any reimbursement payments flowing between them.